## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GREGORY BOUTCHARD, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | |
| KAMALDEEP GANDHI, YUCHUN MAO a/k/a BRUCE MAO, KRISHNA MOHAN, TOWER RESEARCH CAPITAL LLC, and JOHN DOE Nos. 1 – 5, | **CLASS ACTION COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Gregory Boutchard ("Plaintiff") complains upon knowledge as to himself and his own actions and upon information and belief as to all other matters against Defendants Kamaldeep Gandhi ("Gandhi"), Yuchun Mao a/k/a Bruce Mao ("Mao"), Krishna Mohan ("Mohan"), Tower Research Capital LLC ("TRC"), and John Doe Nos. 1 – 5 (collectively, "Defendants") as follows:

### SUMMARY OF ALLEGATIONS

1.      This action arises from Defendants' unlawful and intentional manipulation of E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts (collectively, the "E-mini Index Futures") from at least March 1, 2012 through October 31, 2014 ( the "Class Period") in violation of the Commodity Exchange Act, 7 U.S.C. §§ 1, *et seq.* (the "CEA") and the common law.

2.      Defendants are a group of futures traders and the trading firms that employ them. In October 2018, the United States Department of Justice ("DOJ") brought criminal charges against Defendants Mao, Gandhi, and Mohan, for participating in a scheme to manipulate the prices of E-mini Index Futures contracts traded on the Chicago Mercantile Exchange ("CME"). Defendants

manipulated the prices of these futures contracts using a technique called "spoofing" in which they placed orders for E-mini Index Futures and then canceled them prior to execution to send false supply and demand signals to the market. This false pricing information caused E-mini Index Futures prices to move in a direction that was favorable to Defendants' trading positions but harmful to other investors, like Plaintiff and the Class.

3.      On October 11, 2018, Defendant Gandhi entered a settlement agreement with the U.S. Commodity Futures Trading Commission ("CFTC"), admitting that he manipulated the prices of E-mini Index Futures thousands of times during the Class Period by spoofing.[1] The CFTC specifically identified example days when Gandhi manipulated futures prices. Plaintiff transacted hundreds of E-mini Index Futures on certain of these days and suffered a net loss on his transactions as a result of Defendants manipulative conduct.

4.      This is not the first time Defendants have employed the same type of manipulation. For example, Defendants TRC, Mao, and Gandhi were subject to disciplinary proceedings before the National Futures Association ("NFA") for spoofing the gold and copper futures markets. TRC is also currently under investigation by Korean securities regulators for manipulating the prices of KOSPI 200 index futures (the Korean index similar to the E-Mini Index Futures at issue here) traded on the CME Globex.

5.      Given the concealed and secretive nature of Defendants' manipulation, more evidence supporting the allegations in this Complaint will be uncovered after a reasonable opportunity for discovery.

---

[1] *In the Matter of: Kamaldeep Gandhi*, CFTC Docket No. 19-01, Order Instituting Proceedings Pursuant to Section 6(c) and (d) of The Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions (CFTC Oct. 11, 2018), https://www.cftc.gov/sites/default/files/2018-10/enfkamaldeepdandhiorder101118.pdf [hereinafter, the "CFTC Order"].

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337(a), and Section 22 of the CEA, 7 U.S.C. § 25. This Court also has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy, and under 28 U.S.C. § 1332, because the amount in controversy for the Class exceeds $5,000,000 and there are members of the Class who are citizens of a different state than Defendants.

7.     Venue is proper in the Northern District of Illinois, pursuant to 28 U.S.C. § 1391 (b), (c), and (d) and Section 22 of the CEA, 7 U.S.C. § 25(c). One or more of the Defendants resided, transacted business, was found, or had agents in the District. Further, a significant part of the events giving rise to the claims occurred in the Northern District of Illinois. For example, the CME, where the alleged manipulation occurred, is in Chicago, Illinois and the CME's Globex electronic trading system utilizes servers located in Chicago and Aurora, Illinois.

8.     Defendants, directly and indirectly, made use of the means and instrumentalities of transportation or communication in, or the instrumentalities of, interstate commerce, or of the mails in connection with the unlawful acts and practices and course of business alleged herein.

## PARTIES

### A.     Plaintiff

9.     Plaintiff Gregory Boutchard is a resident of California. Plaintiff transacted in thousands of E-mini S&P 500 Futures contracts and E-mini NASDAQ 100 Futures contracts throughout the Class Period—and lost money—trading at artificial prices proximately caused by Defendants' unlawful manipulation as alleged herein. Defendants spoofed the market for E-mini

Index Futures thousands of times throughout the Class Period, which deprived Plaintiff and the Class of the ability to transact in a lawful, unmanipulated market.

10. Plaintiff Boutchard suffered economic injury, including monetary losses, as a direct result of Defendants' manipulation of E-mini Index Futures prices. For example, the DOJ's criminal filings and the CFTC Order provide examples of Defendants' misconduct on certain days, including November 25, 2013, December 16, 2013, September 17, 2014, and September 25, 2014, when Defendants engaged in spoofing to manipulate the prices of E-mini S&P 500 futures contracts. Plaintiff Boutchard traded hundreds of the E-mini S&P 500 futures contracts on each of these same days and suffered a net loss because he transacted at artificial prices caused by Defendants' manipulation. For example, on December 16, 2013, Plaintiff bought and sold 630 March 2014 E-mini S&P 500 futures contracts throughout the trading day and suffered a net loss because he transacted at artificial prices caused by Defendants' manipulation.

**B. Defendants**

11. Defendant Tower Research Capital LLC is a limited liability company with its principal place of business in New York. TRC employs hundreds of traders worldwide and has offices in Chicago, Charleston, London, India, Singapore, and Hong Kong. TRC operates through various subsidiaries including Latour Trading LLC, Tower Research Capital Europe Limited, Tower Research Capital India Pvt. Ltd., Tower Research Capital (Singapore) Pte. Ltd., and TRC Markets LLC. Defendant TRC employed Defendants Mao, Gandhi, and Mohan during the Class Period.

12. Defendant Yuchun Mao, also known as Bruce Mao, is a citizen of the People's Republic of China. Defendant Mao was an employee of Defendant TRC in its Chicago and New York offices. Defendant Mao has been indicted on one count of conspiracy to commit commodities fraud,

two counts of commodities fraud, and two counts of spoofing—all related to the conduct at issue in this case.

13. Defendant Kamaldeep Gandhi is a resident of the State of Illinois. Defendant Gandhi has agreed to plead guilty to two counts of conspiracy to engage in wire fraud, commodities fraud, and spoofing—all related to the conduct at issue in this case. Defendant Gandhi was an employee or agent of Defendant TRC from the beginning of the Class Period until approximately March 2014. Subsequently, Defendant Gandhi was an employee or agent of Defendant John Doe No. 1, also referred to herein as Trading Firm B, from in or around May 2014 through in or around October 2014.

14. Defendant Krishna Mohan is a resident of the State of New York. Defendant Mohan has agreed to plead guilty to one count of conspiracy to engage in wire fraud, commodities fraud, and spoofing—all related to the conduct at issue in this case. Defendant Mohan was an employee of Defendant TRC at all relevant times described herein.

15. Defendant John Doe No. 1, also referred to herein as "Trading Firm B," is a financial trading firm with offices in Chicago, Illinois. Defendant John Doe No. 1 is referred to as "Trading Firm B" in the criminal information filed against Defendant Gandhi in the U.S. District Court for the Southern District of Texas. Defendant Gandhi was an employee or agent of Defendant Trading Firm B from in or around May 2014 through in or around October 2014.

16. Defendants John Does Nos. 2–5, inclusive, are other individuals or entities that participated in the manipulation and unlawful conduct described herein. These defendants may include other financial firms, or employees or agents of Defendant TRC or Defendant Trading Firm B.

## SUBSTANTIVE ALLEGATIONS

### A. Market Background

17. **Commodity Futures Contract.** A commodity futures contract is a standardized bilateral executory agreement for the purchase and sale of a particular commodity at a specified price at a specified time in the future. In the context of futures trading, a commodity is the underlying instrument upon which a futures contract is based. The commodity underlying a futures contract can be a physical commodity, *e.g.* corn or silver, or a financial instrument, *e.g.* Treasury bills, foreign currencies, or the value of a stock index. The CME, as a Designated Contract Market pursuant to Section 5 of the CEA, 7 U.S.C. § 7, specifies the terms for each of the futures contracts it lists, including the underlying commodity, trading units, price quotation, trading hours, trading months, minimum and maximum price fluctuation, and margin requirements.

18. **"Long" and "Short" Futures.** Futures contracts represent a commitment to make (in the case of a short contract) or take (long contracts) "delivery" of the underlying commodity at a defined point in the future. While some futures contracts may be settled by delivery of the actual commodity at the conclusion of the contract, E-mini Index Futures are "cash settled" (also referred to as "financially settled") meaning that the parties to the futures contract exchange the cash equivalent of the difference in value between the price specified in the futures contract and the value of the underlying commodity at the time of settlement. Futures contracts can also be offset before settlement.

19. **Offset by Trading.** Futures market participants almost always "offset" their futures contracts before the expiration month when delivery or settlement occurs. For example, a purchaser of one futures contract may liquidate, or cancel or offset, a future obligation to take delivery of the commodity underlying that contract by selling one equivalent futures contract. This sale of one

contract offsets or liquidates the earlier purchase of one contract. The difference between the initial purchase price and the sale price represents the realized profit or loss for the trader.

20. **Options Contract**. An options contract is an agreement that gives the buyer, or "option holder," the right, but not the obligation, to either buy or sell something at a specified price during a specified time period. The buyer of an option pays an "option premium" to the seller for the right to buy (call) or sell (put) the underlying commodity (in this case, E-mini Index Futures contracts).

21. "**Call options**" confer upon the buyer the right, but not the obligation, to buy the commodity at the specified price (the "strike" price). Call options confer upon the seller, or "option writer" the obligation to sell the commodity at the strike price. The buyer (the "long" or "option holder") of one call option wants the value of the underlying commodity to increase so that the buyer can exercise the option at a price less than the underlying commodity is worth and make a profit. The seller (person that is "short") of a call option wants to avoid having to sell the underlying commodity at a price below market value. Therefore, the trader that is short a call option would prefer the value of the underlying asset decrease.

22. "**Put options**" confer upon the buyer the right, but not the obligation, to sell the underlying commodity at the strike price, and they confer upon the seller the obligation to buy the underlying commodity at the strike price if the option is exercised. The buyer of one put contract, assuming no offsetting hedges, wants the value of the underlying commodity to decrease so that the buyer can sell the commodity at above-market price. Conversely, the seller of the put option wants the price of the underlying asset to stay above the strike price so that the seller of the option would not be forced to buy the underlying futures at an above-market price.

### 1. E-Mini Standard & Poor's 500 Futures

23.     An E-mini Standard & Poor's 500 Future ("E-mini S&P Future") is a futures contract where the underlying commodity is the value of the S&P 500 stock index, which comprises 500 individual stocks representing the market capitalizations of large U.S. companies.

24.     E-mini Standard & Poor's 500 Futures are exchange-listed financial instruments on the CME and traded electronically on the CME's Globex platform. E-mini S&P Futures Contracts are cash settled.

### 2. E-Mini NASDAQ 100 Futures

25.     An E-mini NASDAQ 100 Futures Contract ("E-mini NASDAQ Future") is a futures contract where the underlying commodity is the value of the NASDAQ 100 stock index, an index of the 100 leading non-financial U.S. large-cap companies.

26.     E-mini NASDAQ 100 Futures are exchange-listed financial instruments that are traded electronically on the CME's Globex platform and are cash settled.

### 3. E-Mini Dow Jones Industrial Average Futures

27.     An E-mini Dow Jones Industrial Average Future ("E-mini Dow Future") is a futures contract where the underlying commodity is the value of the Dow Jones Industrial Average, a price-weighted average of 30 large public U.S. stocks traded on the New York Stock Exchange and NASDAQ.

28.     E-mini Dow Jones Industrial Average Futures are exchange-listed financial instruments that are traded electronically on the CME's Globex platform and are cash settled.

**B.** **Defendants manipulated the prices of E-mini Index Futures and Options contracts to artificial levels throughout the Class Period**

29. Defendants spoofed the E-mini Index Futures market thousands of times throughout the Class Period to illegally increase their trading profits, at the expense of Plaintiff and the Class.

30. "Spoofing" or placing orders to buy or sell futures contracts with the intent to cancel those orders before execution is a classic manipulative trading tactic that has frequently been utilized in futures markets (including by Defendants).

31. Spoofing works by using large orders to create a false impression of supply or demand that impacts futures contract prices. For example, a trader engaged in spoofing prices lower will place an order to buy futures contracts at a price below the lowest ask price then available in the market, *i.e.*, a price lower than where any market participant would be willing to sell. The trader will then place one or more large orders—orders the trader never intends to execute—to *sell* a substantial amount of the same contract on the opposite side of the market, *i.e.*, at a price that is at or above the lowest ask price available in the market. These large orders signal that investors are selling their futures contracts, causing prices to decrease, in response to the apparent increase in supply, toward the price at which the trader entered their initial buy order. These large orders are cancelled before they are filled, as the trader intended when the orders were placed, so the trader never enters a transaction at that price level.

32. The same technique can also be used in reverse to manipulate prices artificially higher. For example, a trader can place an order to sell futures contracts at well above the current market prices and then, by entering and canceling large orders to buy that same futures contract, send an artificial signal of increased demand to the market that drives futures prices higher towards the level of the initial sell order.

33.     In each instance, the trader profits because spoofing allows the trader to buy futures contracts at below the current market price or sell futures contracts at above the current market price.

34.     To accomplish their manipulation and cause artificial E-mini Index futures and options prices throughout the Class Period, Defendants used sophisticated trading technology and automation to spoof the market and cause artificial prices. This allowed Defendants to create the artificial prices in the market that they desired, while only having their spoof orders filled less than 1% of the time.

35.     Defendants regularly submitted large-volume trading orders to buy or sell E-mini Index Futures, but they never intended to have these orders filled. Instead, Defendants intended for these orders to falsely signal artificial levels of supply or demand to other market participants to illegitimately benefit Defendants' other orders and positions to the detriment of Plaintiff and the Class.

36.     For instance, on December 16, 2013, when employed by Defendant TRC, Defendant Gandhi placed an "iceberg" order[2] to buy 100 March 2014 E-mini S&P Futures contracts (only displaying 12 contracts to the market at a time). Using sophisticated software, Defendant Gandhi then quickly placed four separate large spoof orders to sell E-mini S&P Futures, opposite his buy order. These spoof orders to sell represented a total of 600 E-mini S&P Futures contracts at three different price levels, which increased the number of contracts offered for sale at those price levels by more than 50%. Unlike with his buy order, Defendant Gandhi made these spoof orders entirely visible to the market to maximize their impact. After Defendant Gandhi entered the last of his spoof orders, his buy order was filled in full. Defendant Gandhi then submitted an additional order to buy additional E-mini S&P Futures. After this second buy order was partially filled, Defendant Gandhi cancelled all

---

[2] An "iceberg" or "iceberg order" is an order to buy or sell that only makes small portions of the entire order visible to the market at one time.

of the spoof orders prior to their being filled. Defendant Mao also spoofed the E-mini S&P Futures market on this date.

37. Additionally, on September 17, 2014, Defendant Gandhi placed an iceberg order to sell 250 December 2014 E-mini S&P Futures contracts (only displaying 19 contracts to the market at a time). Using sophisticated software, Defendant Gandhi then placed twenty-five spoof orders to buy a total of 250 E-mini S&P Futures contracts, and a spoof iceberg order to buy 250 more contracts, opposite his sell order. These spoof orders to buy represented a total of 500 E-mini S&P Futures contracts at one price level, which increased the number of bids to buy contracts at that price level by more than 50%. After Defendant Gandhi entered his spoof orders, his initial sell order was filled in full. Defendant Gandhi then cancelled all of the spoof orders prior to their being filled.

38. Through their manipulative conduct, Defendants unlawfully increased their profits at the expense of Plaintiffs and the Class. As a result of Defendants' manipulative conduct and spoofing, innocent market participants that traded E-mini Index Futures, such as Plaintiff and the Class, traded at artificial prices throughout the Class Period caused by Defendants' manipulation.

## C. Defendants manipulated and spoofed other commodity futures markets.

39. Regulators and government agencies have imposed fines and criminal sanctions against several of the Defendants for spoofing and other manipulation of the futures markets. The regulatory findings and disciplinary proceedings against Defendants demonstrate that they developed a practice of manipulating the market through spoofing to increase their profitability at the expense of other investors.

40. For example, on May 28, 2014 the Financial Services Commission ("FSC"), a Korean securities regulator, revealed that it referred a U.S. algorithmic trading specialty company to the prosecutor's office for its use of fictitious trades to manipulate the price of KOSPI 200 Futures traded

on the CME Globex. The FSC reported that the manipulation resulted in unlawful profits of approximately USD $14.1 million.[3] Many news articles in Korea followed, providing additional information about the scheme, including that the anonymous U.S. algorithmic trading company was, in fact, TRC. The FSC's investigation is ongoing.

41.     And in 2017 the National Futures Association ("NFA") found that Defendants TRC, Gandhi, and Mao committed multiple "General Offenses." The NFA found that from November 1, 2013 to December 27, 2013 three employees of Defendant TRC used spoofing to manipulate the prices of gold and copper futures contracts traded on Commodity Exchange, Inc ("COMEX"), another Designated Contract Market owned and operated by the CME. TRC was ordered to pay a monetary fine of $150,000 and to disgorge total profits of $162,000.[4]

42.     In a settlement with the NFA, Defendants Gandhi and Mao agreed to:

an entry of findings by a Panel of the COMEX Business Conduct Committee . . . that, between November 2013 and December 2013 . . . [they] while employed as . . . proprietary trader[s] . . . engaged in disruptive trading activity in the Gold and Copper Futures market by entering orders without the intent to trade. Specifically, the Panel found that . . . [Gandhi and Mao] typically layered orders on one side of the market and then cancelled them after resting orders on the opposite side of the book were executed.[5]

43.     The NFA ordered that Defendant Gandhi be permanently banned from: (1) applying for membership at any CME Group exchange, (2) having direct or indirect access to any trading or clearing platform owned or controlled by CME Group Inc., including CME Globex, and (3) having access to any trading floor owned or operated by any CME Group, Inc. exchange.[6] The NFA also

---

[3] Press Release, Republic of Korea Financial Services Commission, *available at* http://www.fss.or.kr/fss/kr/promo/bodobbs_view.jsp?seqno=17872&no=10671&s_title=&s_kind=&page=35.

[4] Case Summary Tower Research Capital LLC, National Futures Association, *available at*, https://www.nfa.futures.org/BasicNet/Case.aspx?entityid=0315778&case=13-9693-BC&contrib=CEI (last accessed October 15, 2018).

[5] *Id.*

[6] *Id.*

ordered that Defendant Mao pay a $20,000 fine and be completely banned from trading on any CME futures exchange for a period of two years.[7]

## **CLASS ACTION ALLEGATIONS**

44.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and as representative of the following Class:

> All persons and entities that purchased or sold any E-mini Dow Futures contract(s), E-mini S&P 500 Futures contract(s), or E-mini NASDAQ 100 Futures contract(s), or any option on those futures contracts, during the period of at least March 1, 2012 through at least October 31, 2014.[8]

45.    Excluded from the Class are Defendants, their officers and directors, management, employees, subsidiaries, or affiliates. Also excluded from the Class is the Judge presiding over this action, his or her law clerks, spouse, any other person within the third degree of relationship living in the Judge's household, the spouse of such person, and the United States Government.

46.    The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff is informed and believes that at least hundreds, if not thousands, of geographically dispersed Class members transacted in E-mini Dow Futures contract(s), E-mini S&P 500 Futures contract(s), or E-mini NASDAQ 100 Futures contract(s), or options on those futures contracts throughout the Class Period.

47.    Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the members of the Class sustained damages arising out of Defendants' common course of conduct in the violations of law as complained of herein. The injuries and damages of each member

---

[7] *Id.*

[8] Plaintiff has defined the Class based on currently available information and hereby reserves the right to amend the definition of the Class, including, without limitation, the Class Period.

of the Class were directly caused by Defendants' wrongful conduct in violation of the laws as alleged herein.

48.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is an adequate representative of the Class and has no interest that is adverse to the interests of absent Class members. Plaintiff has retained counsel competent and experienced in class action litigation, including commodity futures manipulation class action litigation.

49.     Common questions of law or fact exist as to Plaintiff and all Class members, and these common questions predominate over any questions affecting only individual members of the Class. These predominant questions of law and/or fact common to the Class include, without limitation:

a. Whether Defendants' manipulated the price of E-mini Dow Futures contract(s), E-mini S&P 500 Futures contract(s), or E-mini NASDAQ 100 Futures contract(s), or the price of options on those futures contracts, in violation of the CEA;

b. Whether such manipulation caused the price of E-mini Dow Futures contract(s), E-mini S&P 500 Futures contract(s), or E-mini NASDAQ 100 Futures contract(s), or the price of options on those futures contracts, to be artificial;

c. Whether such manipulation caused a cognizable injury under the CEA;

d. Whether Defendants' unlawful conduct caused actual damages to Plaintiff and the Class;

e. Whether Defendants were unjustly enriched at the expense of Plaintiff and members of the Class;

f. The operative time period and extent of Defendants' unlawful conduct; and

g. The appropriate nature and measure of Class-wide relief.

50.     A class action is superior to other methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Treatment as a class action will permit a "large number" of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous

individual actions would engender. Class treatment will also permit the adjudication of claims by many class members who could not afford individually to litigate claims such as those asserted in this Complaint. The cost to the court system of adjudication of such individualized litigation would be substantial. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendants.

51.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

52.     The applicable statutes of limitations relating to the claims for relief alleged in herein were tolled because of fraudulent concealment involving both active acts of concealment by Defendants and inherently self-concealing conduct.

53.     By its very nature, the unlawful activity alleged herein was self-concealing. Defendants engaged in secret and surreptitious activities to submit and cancel trade orders into the CME Globex system in order to manipulate the prices of E-mini Index Futures to artificial levels.

54.     Defendants concealed their manipulative acts by, *inter alia*, placing orders using the CME Globex trading platform to buy or sell E-mini Index Futures at a certain price, even though they secretly had no intent of transacting at that level. At no point did Defendant disclose that they placed these orders to manipulate the prices of the E-mini Index Futures. Because of such fraudulent concealment, and the fact that Defendants' manipulation is inherently self-concealing, Plaintiff and the members of the Class could not have discovered the existence of Defendants' manipulation any earlier than the date of the public disclosures thereof.

55.     As a result, Plaintiff and the Class had no knowledge of Defendants' unlawful and self-concealing manipulative acts and could not have discovered the same by the exercise of due diligence on or before October 12, 2018, when the U.S. Department of Justice issued a press release regarding the indictment and informations filed against Defendants Mao, Gandhi, and Mohan.

56.     As a result of the concealment of Defendants' unlawful conduct, and the self-concealing nature of Defendants' manipulative acts, Plaintiff asserts the tolling of the applicable statute of limitations affecting the rights of the causes of action asserted by Plaintiff.

57.     Defendants are equitably estopped from asserting that any otherwise applicable limitations period has run.

**CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**
**For Manipulation in Violation of the Commodity Exchange Act**
**7 U.S.C. §§ 1, *et seq.***
**(As Against All Defendants)**

58.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

59.     Defendants through their acts alleged herein, from at least March 1, 2012 through at least October 31, 2014, specifically intended to and did cause unlawful and artificial prices of E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts, in violation of the CEA, 7 U.S.C. § 1, *et seq.*, through their use of fictitious buy and sell orders and other manipulative conduct.

60.     Defendants manipulated the price of a commodity in interstate commerce or for future delivery on or subject to the rules of any registered entity, in violation of the CEA.

61.     During the Class Period, the prices of E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures

contracts, did not result from the legitimate market information and the forces of supply and demand. Instead, the prices of E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts, were artificially inflated, or deflated, by Defendants' spoofing and other manipulative trading activities.

62.     Throughout the Class Period, Defendants entered large orders to buy or sell without the intention of having those orders filled, and specifically intending to cancel those orders prior to execution. Defendants did this with the intent to inject false information about supply and demand into the market place, and to artificially move prices up or down to suit Defendants' own trades and positions. As a result of these artificial prices, Plaintiff and the Class suffered losses on their trades in E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts.

63.     Through their use of spoofing and other manipulative techniques, Defendants manipulated the prices of E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts, throughout the Class Period and thereby caused damages to Plaintiffs and Class members who purchased or sold at these artificially inflated or deflated prices.

64.     At all times and in all circumstances previously alleged herein, Defendants had the ability to cause and did cause artificial prices of E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts. Defendants, either directly and/or through their employees and/or affiliates, were active in the markets for E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts, and were aware of the effects of spoofing and other manipulative conduct on those markets.

65.     Defendants ability to cause artificial prices was enhanced through their use of high-powered computers and high-speed trading platforms, which allowed them to place and cancel large spoof orders while avoiding having those orders filled.

66.     By their intentional misconduct, Defendants each violated Sections 6(c), 6(d), 9(a), and 22(a) of the CEA, 7 U.S.C. §§ 9, 13b, 13(a), and 25(a), throughout the Class Period.

67.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered damages and injury-in-fact due to artificial prices for E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts, to which Plaintiff and the Class would not have been subject but for the unlawful conduct of the Defendants as alleged herein.

68.     Plaintiff and members of the Class are each entitled to actual damages sustained in E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts for the violations of the CEA alleged herein.

### SECOND CLAIM FOR RELIEF
### For Employing a Manipulative and Deceptive Device In Violation of The Commodity Exchange Act
### 7 U.S.C. §§ 1, *et seq.* and Regulation 180.1(a)
### (As Against All Defendants)

69.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

70.     Defendants' unlawful conduct as described herein, including the use of systematically submitting and cancelling spoof orders and engaging in other manipulative conduct in order to artificially move prices for E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts, constitutes the employment of a manipulative and deceptive device.

71. As alleged herein, Defendants acted intentionally—and, even if they are found to not have acted intentionally, then at least acted recklessly—in employing the manipulative and deceptive device to procure ill-gotten trading profits at the expense of Plaintiff and the Class.

72. By their intentional misconduct, Defendants each violated Sections 6(c) and 22(a) of the CEA, 7 U.S.C. §§ 9 and 25(a), throughout the Class Period.

73. As a result of Defendants' unlawful conduct, Plaintiff and members of the Class have suffered damages and injury-in-fact due to artificial prices for E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts, to which Plaintiff and the Class would not have been subject but for the unlawful conduct of the Defendants as alleged herein.

74. Plaintiff and members of the Class are each entitled to damages for the violations of the CEA alleged herein.

## THIRD CLAIM FOR RELIEF
### Principal-Agent Liability for Violation of The Commodity Exchange Act
### 7 U.S.C. §§ 1, *et seq.*
### (As Against All Defendants)

75. Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

76. Each Defendant is liable under Section 2(a)(1) of the CEA, 7 U.S.C. § 2(a)(1), for the manipulative acts of its agents, representatives, and/or other persons acting for the Defendants in the scope of their employment.

77. Plaintiff and members of the Class are each entitled to damages for the violations alleged herein.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (As Against All Defendants)

78.     Plaintiff re-alleges and incorporates the preceding allegations of this Complaint with the same force and effect as if fully restated herein.

79.     Defendants financially benefited from their unlawful acts. As alleged herein, Defendants submitted spoof orders to the CME Globex and employed other manipulative techniques to manipulate the prices of E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts, in an artificial direction. Defendants intended to, and did, artificially alter prices in a direction that benefitted their trades and positions, at the expense of Plaintiff and the Class.

80.     These unlawful acts caused Plaintiff and other members of the Class to suffer injury, lose money, and transact at artificial prices in E-mini Dow Futures contracts, E-mini S&P 500 Futures contracts, and E-mini NASDAQ 100 Futures contracts, and options on those futures contracts.

81.     As a result of the foregoing, it is unjust and inequitable for Defendants to have enriched themselves in this manner at the expense of Plaintiff and members of the Class, and the circumstances are such that equity and good conscience require Defendants to make restitution.

82.     Each Defendant should pay restitution for its own *unjust* enrichment to Plaintiff and members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the requested relief as follows:

a.  for an Order certifying this lawsuit as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, designating Plaintiff as the Class representative, and appointing his counsel as Class counsel;

b. for a Judgment awarding Plaintiff and the Class damages against Defendants for their violations of the CEA, together with prejudgment interest at the maximum rate allowable by law;

c. for a Judgment awarding Plaintiff and the Class restitution of any and all sums of Defendants' unjust enrichment;

d. for an award to Plaintiff and the Class of their costs of suit, including reasonable attorneys' and experts' fees and expenses; and

e. for such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury for all issues so triable.

Dated: October 19, 2018

Respectfully submitted,

By: _/s/ Anthony F. Fata_
**CAFFERTY CLOBES MERIWETHER &**
**SPRENGEL LLP**
Anthony F. Fata
Brian O'Connell
150 S. Wacker, Suite 3000
Chicago, IL 60606
Tel.: (312) 782-4880
Fax: (312) 782-4485
Email: afata@caffertyclobes.com
boconnell@caffertyclobes.com

**LOWEY DANNENBERG, P.C.**
Vincent Briganti (_pro hac vice_ to be filed)
Raymond P. Girnys (_pro hac vice_ to be filed)
Christian P. Levis (_pro hac vice_ to be filed)
Lee J. Lefkowitz (_pro hac vice_ to be filed)
Johnathan Seredynski (_pro hac vice_ to be filed)
Peter Demato, Jr. (_pro hac vice_ to be filed)
44 South Broadway
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
Email: vbriganti@lowey.com
rgirnys@lowey.com
clevis@lowey.com
llefkowitz@lowey.com
jseredynski@lowey.com
pdemato@lowey.com

_Attorneys for Plaintiff_